# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

RONALD CHAPPELL,

    Plaintiff,

v.

CO WOODS, et al.,

    Defendants.

Case No. 1:17-cv-80

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff, an individual who so frequently litigated in this Court while incarcerated that he was barred under 28 U.S.C. § 1915(g) from filing additional cases without the payment of filing fees,[1] initiated this lawsuit after his release from prison. Once released from prison, Plaintiff was also released from the constraints of 28 U.S.C. § 1915(g), and therefore was no longer barred from filing the instant lawsuit *in forma pauperis*. (Doc. 15).

Pursuant to a calendar order of this Court, as amended, Defendants filed a timely motion for summary judgment on May 17, 2018. In addition to Defendants' motion, Plaintiff has filed multiple motions. For the reasons discussed herein, Defendants' motion should be GRANTED, Plaintiff's motions should be DENIED, and this case should be dismissed.

---

[1] *See, e.g., Chappell v. Warden*, Case No. 1:14-cv-690 (petition for writ of habeas corpus); *Chappell v. Ohio Supreme Court*, Case No. 2:14-cv-997 (petition for writ of mandamus); *Chappell v. Ohio Supreme Court*, Case No. 2:14-cv-1141 (civil rights); *Chappell v. Justice Pfeifer*, Case No. 2:14-cv-1148 (civil rights); *Chappell v. Warden*, Case No. 1:15-cv-294 (petition for writ of habeas corpus); *Chappell v. Morgan*, Case No. 2:15-cv-1110 (civil rights); *Chappell v. Lewis*, Case No. 1:16-cv-659 (civil rights, discussing basis for "three strike" bar).

## I. Allegations of Complaint

Plaintiff's complaint alleges that four Defendants, all correctional officers or officials at the Southern Ohio Correctional Facility ("SOCF") violated Plaintiff's civil rights during his incarceration. His complaint alleges that Defendant Woods used excessive force against Plaintiff on February 13, 2015 and "lied in reports to cover up attack." (Doc. 3, ¶4). He alleges that Defendant Warren is "Chief of Security at SOCF," that Defendant Davis is "responsible" for protective custody investigations, and that both are liable for their failure to protect Plaintiff during his incarceration. (*Id.* at ¶¶ 5-6). He alleges that Defendant Mahlman is "responsible for inappropriate supervision," and also is liable for a failure to protect, because she "refused to address my problem and issues of threats from staff and inappropriate supervision." (*Id.* at ¶7).

Nearly a year prior to the February 13, 2015 incident, Plaintiff alleges that he was first "threatened" by an inmate identified as "White Beast AB member" on March 7 and March 27, 2014.[2] On the two referenced dates, White Beast allegedly told Plaintiff that he would be attacked once he was released to general population. Plaintiff alleges that two months later, on May 23, 2014, he first requested protective custody from Defendant Warren. On May 27, 2014, Defendant Warren told Plaintiff that his request had been "given to proper staff to look into." (*Id.* at ¶9). Plaintiff alleges that nearly seven months later, on January 12, 2015, Plaintiff made a second request for protective custody, and was told he would be given a "pass" to go to Defendant Warren's office to speak further about his concerns, but that no pass was ever provided.

---

[2]The parties agree that the reference to "AB" is a reference to the Aryan Brotherhood, a white supremacist prison gang. Plaintiff is African-American.

Plaintiff alleges that he was eventually attacked by another inmate on February 13, 2015, after being released into the general population:

> On 2-13-15 I was sent to general population. ….I was accosted by inmates and accused of snitching on White Beast. The Inmate Collins identified himself as a member of AB and said I was a Bitch for snitching on his Brother White Beast. I ignored them. Then the inmate [Collins] asked his friend to give him the knife so he could stab me for snitching. We began fighting. While we were fighting CO Woods came up behind me and hit me in my face with his PR stick knocking me unconscious and busting my face causing me to be sent to hospital for stiches. CO Woods liked in his report saying Inmate Collins hit me but incident is on camera and CO Woods hit me with stick! Even Lt. Setty and other captains have verified this with me.

(Doc. 3 at ¶10).

Plaintiff alleges that Defendant Warren is liable for failing to protect Plaintiff from attacks from other inmates or staff. He alleges that Defendant Davis "was made aware" of threats and failed to give Plaintiff a timely protective custody hearing, and is also liable for her failure to protect. (*Id.* at ¶¶12-15). Similarly, Plaintiff alleges that Defendant Mahlman is liable for a failure to protect, since she also was informed of "threats made by White Beast and staff advising me that I would be attacked" when released to general population." (*Id.* at ¶16).

Without specifying whether he has named the Defendants in their individual or official capacities, Plaintiff seeks compensatory damages in the amount of $800,000.00 against each of the four Defendants "jointly and severally." (*Id.* at ¶23). He also seeks punitive damages in the amount of $100,000.00 against each Defendant.

II.    **Analysis**

A. **Summary Judgment Standard of Review**

In their motion for summary judgment, Defendant Woods argues that he is entitled

3

to judgment based on evidence that he did not use <u>any</u> force against Plaintiff on February 13, 2015, but instead, that Plaintiff was injured after he initiated a fight with another inmate and was punched by that inmate. The remaining Defendants argue that Plaintiff cannot maintain a "failure to protect" claim that arises from a fight that Plaintiff himself initiated.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents ... affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact." This Court must consider the cited materials, but "may" consider other materials in the record. Rule 56(c)(3).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

**B.  The Defendants Are Entitled to Summary Judgment**

### 1. The Video Record and Other Evidence Contradict Plaintiff's Account That Defendant Woods Used Excessive Force

Although a court must construe facts in favor of the non-moving party, that does not mean that courts must accept, wholesale, any version of facts alleged in a complaint. Rather, a court must view facts in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting Rule 56(c)).  By contrast, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*, 127 S.Ct. at 1776, 550 U.S. at 380.

The undersigned has reviewed the exhibits filed in support of the Defendants' motion, including the video record of the incident, and finds the allegations in Plaintiff's complaint to be blatantly contradicted by the evidence of record.  The video, declarations, contemporaneous incident reports, medical reports and all other documentary evidence submitted by Defendants confirm facts very different than those alleged in the complaint.

The video record shows that Plaintiff was the first inmate to exit the inmate dining room at approximately 11:48 a.m.  As he exited, he walked to stand at the front of a line where inmates leaving the dining area wait to proceed to their housing units or other parts

5

of the institution. (Doc. 42, Ex. A, Video; Ex. B, Cool Decl., ¶ 11).[3] Two other inmates first joined the line, standing slightly in front of Plaintiff. Within seconds, approximately 15 additional inmates exited the dining room and joined the same line, including a Caucasian subsequently identified as Inmate Collins, who took his place behind Plaintiff. Soon after Collins joined the line, Plaintiff is observed turning around to face him. On the video, Plaintiff then moves out of the line and punches Inmate Collins three times. (*Id*; *see also* Ex. C, incident Reports and Medical Exam Reports at pp 1-2; Ex. K, RIB Documents at 1). Although no audio accompanies the video record, Defendant Woods states that he heard Collins asking Plaintiff to stop. (Ex. L, Woods Decl. at ¶7). In the video, Collins does not initially punch Plaintiff back but instead reacts by grabbing Plaintiff in an apparent attempt to shove him away. Officers gave multiple orders to both inmates to break it up. However, the fight ended only after Inmate Collins eventually punched Plaintiff back. At least one of those punches landed on Plaintiff's mouth, knocking him flat on his back. (Ex. C; *see also* Ex. B, Video, Ex. A., Cool Decl. at ¶11; Ex. K, RIB Documents at 1).

After Plaintiff was knocked to the ground, Defendant Woods moved between the two inmates to ensure that they did not begin fighting again. (Ex. B, Video; Ex. L, Woods Decl. at ¶9). Plaintiff began to get up from the floor, but around the same time, other officers arrived and he dropped back to the floor and covered his head. (Ex. A. Cool Decl. at ¶ 11; Ex. B, Video). At no time on the video did Defendant Woods approach Plaintiff or raise his PR stick toward him, much less hit him in the face as Plaintiff alleges. (Ex. A,

---

[3]All references to Exhibits A through L refer to the exhibits attached to Doc. 42, Defendants' Motion for Summary Judgment.

6

Cool Decl. at ¶ 11, Ex. B, Video; Ex. L, Woods Decl., ¶10). In addition, there is no evidence to support Plaintiff's allegation that he was knocked unconscious by any blow from either Inmate Collins, Defendant Woods, or anyone else. In fact, the video shows that Plaintiff never lost consciousness. (Ex. B, Video; Ex. A, Cool Decl. at ¶¶11-12; Ex. L, Woods Decl. ¶¶10-12). None of the multiple officers who were in the corridor and/or who were summoned to respond saw any force used by any correctional officer. (Ex. C).

Both inmates were escorted to the Infirmary and examined. Consistent with the video record, during his medical exam Inmate Collins stated: "After he hit me the 3rd time I hit him back." (Ex. C at 7). During Plaintiff's exam, Plaintiff complained of jaw and lip pain. The examining nurse documented a lower split lip, and a small "open area" on the left side of Plaintiff's face by his beard line, as well as a scraped left elbow. (Ex. C at 6).

Although Plaintiff alleges in his complaint that Inmate Collins identified himself as a member of the Aryan Brotherhood, institutional records do not reflect that Collins has any known affiliation with that gang or any other prison gang. (Ex. E, Davis Decl. ¶30). In addition, although Plaintiff alleges that Inmate Collins "asked his friend to give him the knife so he could stab me for snitching," the video record does not show Collins reaching for anything, nor were any of the adjacent inmates reaching for anything, either just before or at the time that Plaintiff first struck Collins. As the instigator of the physical altercation, Plaintiff received a conduct report for fighting, was found guilty, and was disciplined. (Ex. K, RIB Documents). Defendant Collins was not disciplined for his role. (Ex. J, Greene Decl., ¶8).

In response to the overwhelming evidence that Plaintiff himself initiated the physical altercation with Inmate Collins on February 13, 2015, and that Defendant Woods

did not use any force against Plaintiff but instead that Plaintiff's injuries were caused by a reciprocal punch landed by Inmate Collins, Plaintiff argues only that the video record has been "doctored/edited" and that all Defendants are "lying." (Doc. 44). In addition to this general argument, Plaintiff has filed a separate motion seeking a "forensic examination" of the video record as well as several related motions. (Doc. 32; *see also* Doc. 33, motion to stay proceedings pending video forensic examination; Doc. 34, motion to appoint counsel based on allegedly doctored video and need for forensic investigation; Doc. 35, motion for protection of evidence in order to preserve doctored video; Doc. 37, motion to compel additional video evidence).

As Defendants point out in their response to the various motions, Plaintiff has offered no evidence to support his allegation that the video has been "doctored." Undermining Plaintiff's assertion of a far-ranging conspiracy and "heavily edited" video evidence, all of the contemporaneous records and documentary evidence are entirely consistent with the video record, including but not limited to Inmate Collins' statement during his medical examination immediately following the fight. Defendants also have provided a declaration that confirms that the video evidence is in its original, unedited format. (Ex. A, Declaration of William Cool). There are no gaps in the time stamp on the video record and no visual evidence that it has been edited in any way. In addition, as noted by Deputy Warden of Operations William Cool in his Declaration, the video player (Panasonic Digital Disk Recorder) has a built-in function called "ALT CHECK." By clicking on the ALT CHECK button, the viewer can test the video for alterations. The test conducted by Deputy Warden Cool, as well as a similar "ALT CHECK" test conducted by the undersigned in this proceeding, confirm that the video has not been altered.

Based on the undisputed record presented, Defendant Woods has carried his burden to show he did not inflict any force whatsoever on Plaintiff during the physical fight that Plaintiff initiated with another inmate on February 13, 2015. There is no genuine dispute as to any material fact. Because he did not use excessive force or violate Plaintiff's civil rights, Defendant Woods is entitled to judgment as a matter of law.

### 2. Defendants Warren, Davis, and Mahlman are Entitled to Judgment

Plaintiff's allegations against Defendants Warren, Davis, and Mahlman are dependent upon his contention that Plaintiff was "attacked" by a member of the Aryan Brotherhood after Plaintiff advised the Defendants of a credible threat and requested protective custody. To make out a failure to protect claim under the Eighth Amendment, a plaintiff must prove both an objective and subjective component, and must show that a prison official was deliberately indifferent to his safety or welfare. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Here, all three Defendants are entitled to summary judgment on Plaintiff's "failure to protect" claims against them because his allegations are blatantly contradicted by the record.

### a. No Failure to Protect Against a Fight Initiated by Plaintiff

As a threshold matter, all evidence of record disproves Plaintiff's allegation that he was (offensively) "attacked" on February 13, 2015 by anyone. Rather, the evidence shows that Plaintiff himself *initiated* a physical fist-fight with another inmate, with no evidence that Inmate Collins took any physical action until after Plaintiff began punching him.[4] Common sense and case law alike confirm that an inmate cannot prove a "failure

---

[4] While it is possible (given the lack of sound accompanying the video record) that Inmate Collins made some verbal taunt or threat toward Plaintiff prior to Plaintiff throwing the first punch, that possibility does not

9

to protect" claim under the Eighth Amendment if that claim is based upon the Plaintiff himself starting a fight with another inmate. Because Plaintiff has failed to show evidence of an objectively genuine threat to his safety or welfare, or that he suffered any harm or injury from that threat, the Defendants are entitled to judgment as a matter of law.

### b. Plaintiff Cannot Prove the Objective Component of a Claim

In addition, the Defendants are entitled to judgment because Plaintiff cannot prove the objective component of his "failure to protect" claim. To prove that he faces an objectively substantial risk of harm, a plaintiff must allege more than a generalized fear or threat of harm. *See Blacker v. Satterthwaite*, 2011 WL 6338851 at (S.D. Oct. 14, 2011); *Mosquera v. Delgado,* 2010 WL 2010973 at *4 (additional citations omitted) (inmate who alleged that he repeatedly told defendants that he feared for his health and safety due to "serious threats and conflict" with gang members did not show objective conditions posing a substantial risk in part because inmate identified only general conflict). Here, the record reflects that Plaintiff failed to notify any of the Defendants of a sufficiently serious risk or threat, or indeed, of anything more than a "generalized" fear which is not sufficient to make out the objective component of an Eighth Amendment claim. *See also Brooks v. Yates*, 2012 WL 2115301 at * 11 (S.D. Ohio March 30, 2012) (noting that grievances would not have put Defendants on notice of an "excessive risk" to Plaintiff's physical safety, but only expressed "generalized" fear; *Dugas v. Wittrup*, 2016 WL 109603 at *7 (S.D. Ohio Jan. 11, 2016) (inmate never identified threat from any specific inmate, but

---

alter the indisputable fact that Plaintiff initiated the physical altercation. In addition, the undersigned notes a lack of any evidence to corroborate any threat by Collins preceding the fight, much less any evidence to corroborate any other allegations in Plaintiff's complaint.

expressed only generalized concern for safety from unidentified inmates, failing to meet objective prong); *Sexton v. Neil*, 2014 WL 6453771, at *5 (S.D. Ohio 2014)

In response to Defendants' motion for summary judgment, Plaintiff reasserts that he first notified prison officials that he had been "threatened" on May 23, 2014. (Doc. 44). However, the exhibit that Plaintiff has offered as proof, an informal complaint ("ICR") addressed to Major Warren, complains only generally that "I gave you a note asking for protection from people," without identifying any specific group or individuals. (Ex. H at 1; Doc. 44 at 6).[5] The "threat" is exceptionally vague and unclear, given that the ICR complains only of being "bombed out [with excrement] and threatened," resulting in Plaintiff "sleeping in feces and urine for over a week." (*Id.*). Defendant Warren's response states: "The note you gave me was immediately given to the proper staff to look into. Your bedding issue will be addressed by Mr. Nolan, Unit A Mng." (*Id.*)[6] Following receipt of the May 23 ICR, Defendant Warren spoke with Plaintiff, asked staff to look into the issue, and forwarded his request for new bedding. (Ex. D at ¶9). Defendants subsequently investigated additional complaints of Plaintiff being "bombed out" with feces and urine. Each time, however, Plaintiff's cell and bedding were observed to be clean, free from feces, and he did not reveal the name of any staff or inmate who had "threatened" him when interviewed. (Ex. D at ¶10; Ex. F at ¶¶17-18).

As a second exhibit to Plaintiff's response in opposition to summary judgment,

---

[5]The timing of the referenced ICR, some nine months prior to Plaintiff's fistfight with Inmate Collins, raises an additional question of whether any Defendant should have viewed the ICR as notice of a credible threat.
[6]Defendants have attached a second nearly identical NOG (appeal of the ICR) relating to the same issue, dated June 4, 2014. The NOG is equally non-specific as to being "threatened" with the only specific complaints relating to being "bombed out" with urine and feces covering his blankets and sheets. (Doc. 42-7 at 2). Those complaints were investigated and determined to be false. (Doc. 42-7 at 3).

11

Plaintiff has attached an ICR dated September 2, 2014. This second ICR is not addressed to any of the Defendants but instead is addressed only to "Investigator." The September 2014 ICR contains the sole reference to alleged threats from the Aryan Brotherhood ("AB") along with a reference to "White Beast," and states in relevant part:

> I am still being threatened by the AB. The AB White Beast threatened me and still sends messages. I am being told to learn to adapt. I am also being told I can get messed up on the streets. The staff is working with these racist[s]. Nobody is doing anything. The staff tell me to adapt because I can't hide. The AB is threatening me. I am trying to play cool. I don't want them to know I'm telling on them. Please help me. Someone is telling them what I say.

(Doc. 44 at 7). The response states: "I will send your request to talk to the STG[,] Mr. Skidmore." The signature (presumably of Mr. Skidmore) is illegible.

There is no genuine issue of material fact that Plaintiff's complaints were too vague to convey more than a "generalized" fear that is insufficient to show the objective component of his claim. All three Defendants deny receiving any reports from Plaintiff of "threats made to him by a specific inmate or staff member." (Ex. D at ¶¶7, 22; Ex. E at ¶¶10, 12, 13, 15, 17). Defendant Warren, Defendant Davis, and Defendant Mahlman have all filed Declarations that detail Plaintiff's long history of "wide-ranging allegations, many of which did not make any sense or were so far-fetched that they were incapable of being true." (Ex. D, Warren Decl. at ¶¶5, 6, 8, 17, 20; *see also* Ex. E, Davis Decl. at ¶¶14, 18, 20; Ex. F, Mahlman Decl., ¶16). Apart from the brief reference to "white beast" in the September 2014 ICR addressed to "Investigator," Plaintiff did not identify to Defendants any individual he was allegedly being threatened by, nor was he able to state when the threats occurred. (*Id.*) Despite a lack of specificity, Defendant Warren nonetheless would "look into or direct another staff member to look into" any and all

12

allegations that appeared to be legitimate or were susceptible of investigation. (Ex. D at ¶¶5, 6, 8, 20). Thus, Plaintiff's various claims were investigated to the extent that they were capable of confirmation but were proven to be false. (Ex. D, Warren Decl.,¶ 10; Ex. F, Mahlman Decl., ¶¶17-20). In addition to the investigation of the May 23, 2014 ICR, Defendants have submitted additional institutional records that reflect other informal complaints and grievances that were investigated and determined to be found false based on video and other evidence (or lack thereof). (*See generally*, Ex. H).

All three Defendants aver that it is common for inmates in restrictive housing to make general statements that they fear attack upon return to general population, but that such "generic statement[s]" are insufficient to investigate or warrant protective custody. (*See e.g.*, Ex. E at ¶24). Defendant Davis explained to Plaintiff that protective custody is available only for specific threats made by another inmate or inmates; it is not available for complaints against staff, which must be handled through the Inspector's office. (Ex. E at ¶¶4-9, 14, 25; Doc. 4). Relevant considerations for protective custody investigations are whether there is a history of the inmate being threatened, whether he has been assaulted or extorted, [or] whether he has been an informant or testified against anyone." (Ex. E at ¶34). Plaintiff did not meet any of the relevant criteria, and his claims were vague and lacked credibility, without any evidentiary support. (Ex. E at ¶34; Ex. D at ¶¶7, 22; Ex. F at ¶16, 20). Plaintiff "was never able to articulate who was threatening him, or what the threat actually entailed." (Ex. E at ¶17). As a result, Davis found nothing to investigate, and "never found any of Inmate Chappel's verbal complaints to me to be credible or substantiated." (Ex. E at ¶¶18-19). Defendant Mahlman similarly states that the "frequency and dishonesties contained in [Plaintiff's] complaints prevented me from

13

taking them very seriously. I never found any of his complaints…to be credible or substantiated." (Ex. F at ¶22).

Based upon Plaintiff's repeated allegations of generalized fear of returning to the general population, Defendant Warren also spoke to the institution's Security Threat Group ("STG") Coordinator but was advised that they had no record of Plaintiff being threatened by any gang member. As to Plaintiff's allegation that Defendant Warren promised to send him a pass on January 12, 2015 but failed to do so, Defendant Warren generally admits that on several occasions, he spoke to Plaintiff and on one date, told him he would have someone come to talk to him. Defendant Warren directed the Unite Manager to go to speak with Plaintiff. That individual reported "that Inmate Chappell was just making the same far-fetched allegations and …generic statements about being scared, without naming any names…." (Ex. D at ¶17). When Plaintiff next saw Defendant Warren and asked "when I was going to call him up…I notified him that his Unit Manager had already spoken with him, and that I considered that the end of it." (*Id.* at ¶18).

Defendant Davis acknowledges receipt of an informal complaint dated February 8, 2015, but that grievance focused on Plaintiff's dissatisfaction with a lack of review of his current security level and access to the law library. In it, Plaintiff complained that he has been housed in restrictive housing for more than a year and wants out. In one sentence, Plaintiff referred vaguely to being "attacked, threatened, and tortured," but does not mention either the Aryan Brotherhood, specific inmates, or any staff members. On February 9, 2015, Defendant Davis responded indicating she had taken steps to make sure his security review was completed as requested. (Ex. E at ¶28-29; Ex. H at 7).

Defendant Mahlman largely denies Plaintiff's allegations concerning the "kites" he

allegedly sent to her on certain dates or verbal complaints that he allegedly made. Defendant Mahlman has submitted records of kites received from Plaintiff, who she describes as "a prolific filer of both kites and grievances while at SOCF." (Ex. F at ¶16; Ex. G). Her records do not correspond to or support the allegations in his complaint that he notified her of specific threats by "White Beast" or any staff. (Ex. F at ¶¶7-16). Plaintiff has submitted no evidence to contradict Defendant Mahlman's records. Defendant Mahlman also relates several instances of complaints made by Plaintiff that were investigated and confirmed to be false. (Ex. F at ¶¶18-20).

### c. Plaintiff Cannot Prove the Subjective Element of a Claim

In addition to failing to prove the objective component of his claim, Plaintiff cannot prove the subjective component of a failure to protect claim. Subjectively, none of the Defendants believed that Plaintiff was in danger or that he faced an excessive risk to his safety. (Ex. D, Warren Decl., ¶¶19-22; Ex. E, Davis Decl., ¶¶ 36-38; Ex. F, Mahlman Decl., ¶¶23-24). Under the circumstances, Defendants' subjective belief was reasonable. *Accord Dugas v. Wittrup*, 2016 WL 109603 at *7

### 3. Defendants Are Entitled to Judgment for Multiple Reasons

Defendants present several additional arguments that entitle them to judgment as a matter of law. In the interests of judicial economy, those arguments are addressed only briefly. Defendants Mahlman, Warren and Davis are entitled to judgment to the extent that Plaintiff claims that they failed to supervise Defendant Woods (who Plaintiff falsely accuses of using excessive force), since the doctrine of *respondeat superior* does not apply under 42 U.S.C. § 1983. As Defendants point out, other supervisory officials in prior lawsuits filed by Plaintiff have been granted judgment on the same grounds. *See,*

*e.g., Chappell v. Morgan*, Case No. 2:15-cv-1110 (S.D. Ohio Feb. 25, 2016).

Defendants additionally argue that Plaintiff failed to exhaust his administrative remedies, because he did not mention Defendants Woods, Mahlman, Davis or Warren in any informal complaint. The undersigned finds this argument persuasive on the "failure to protect" claim against Mahlman, Davis or Warren, but less persuasive as to the excessive force claim against Woods, because the record reflects Plaintiff filed at least one grievance alleging he was "attacked by staff with sticks in an unreported use of deadly force" on February 13, 2015. (Ex. I at 2).

In addition, all four Defendants are entitled to qualified immunity in their individual capacities on the record presented because Plaintiff has failed to show that any Defendant violated any clearly established constitutional right of which a reasonable person would have known. Last but not least, Defendants are entitled to Eleventh Amendment immunity to the extent that Plaintiff seeks to recover monetary damages against them in their official capacities.

### III. Conclusion and Recommendation

For the reasons discussed above, IT IS RECOMMENDED THAT Defendants' motion for summary judgment (Doc. 42) be GRANTED, that judgment be rendered in favor of all Defendants, and that this case be dismissed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| RONALD CHAPPELL, | Case No. 1:17-cv-80 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CO WOODS, et al., | |
| Defendants. | |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).